IN THE UNITED STATES DISTRICT COURT FOR THE OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| THANH HAI NGOC TRAN<br>7322 Florin Wood Drive, Apt. 603<br>Sacramento, California 95823<br><br>    *Plaintiff*,<br><br>     v.<br><br>THE JOHNS HOPKINS UNIVERSITY<br>CHARLES & 34th Street<br>Baltimore, Maryland 21218<br><br>Serve: ARTHUR P. PINEAU<br>     Interim General Counsel<br>     113 Garland Hall<br>     3400 North Charles Street<br>     Baltimore, Maryland 21218<br><br>    *Defendant*. | Civil Action No.: 1:24-cv-3741 |

**COMPLAINT**

Plaintiff, Thanh Hai Ngoc Tran ("Plaintiff") brings this action against Defendant, The Johns Hopkins University ("JOHNS HOPKINS"), for violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427, and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2.

In support, Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is an adult resident of California and is a former employee of JOHNS HOPKINS. She began the relevant period of her employment as a Research Program Assistant II in Johns Hopkins Molecular Psychiatry Program on March 14, 2024, and was terminated on October 17, 2024 (the "relevant period"). During the relevant period, Plaintiff regularly worked more than 40 hours in a single work week. Not only did Defendant fail to pay her an overtime premium for her overtime hours, but it also paid her nothing at all for those hours, in violation of JOHNS HOPKINS' own policies. In addition, JOHNS HOPKINS failed to pay Plaintiff other promised wages for work she performed, like holiday pay when she worked on holidays, and it charged her for vacation time when she actually worked on the alleged vacation days.

2. JOHNS HOPKINS is a private university. It was Plaintiff's employer within the meaning of the FLSA, the MWLH and the MWPCL because, through its agents, managers and officers, it employed the Plaintiff directly, it hired her, it set her rate of pay, it set the terms and conditions of her employment, it set her schedule, it directed her in the performance of her work, it assigned her work, it maintained her employment records, it paid her wages, it hired and fired her, it directed and encouraged her to work overtime hours without receiving an overtime premium and it committed the violations that are at issue in this case.

3. JOHNS HOPKINS is an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1)(B), because it as it is "engaged in the operation of . . . an institution of higher education." *Id*.

## SUBJECT MATTER JURISDICTION

4. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims involve federal questions, and the Court has pendant jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

## PERSONAL JURISIDICTION

5. This Court has specific and general personal jurisdiction over JOHNS HOPKINS under Maryland's Long Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, because, throughout the relevant period, it was organized under the laws of the State of Maryland, its headquarters are located in the State of Maryland, it regularly transacted business or performed work or services in the State of Maryland. *See* § 6-103 (b)(1). In addition, Plaintiff's cause of action arises out of (or relates to) JOHNS HOPKINS' contacts with the State of Maryland, because, during the time Plaintiff worked at JOHNS HOPKINS, it violated the FLSA, the MWHL and the MWPCL by failing to pay Plaintiff an overtime premium for her overtime hours and otherwise failing to pay her in accordance with its own policies for work performed on holidays and it debited her vacation leave for days when she actually performed work.

## STATEMENT OF FACTS

8. Plaintiff began working as a Research Program Assistant II in Johns Hopkins Molecular Psychiatry Program on March 14, 2024, and she continued to work there until October 17, 2024, when she was terminated. Plaintiff's position entailed rudimentary laboratory assistant work, which was not exempt from the requirements of the FLSA or the MWHL. In fact, the only formal degree requirement for the position was a high school diploma. And, not surprisingly, JOHNS HOPKINS classified Plaintiff's position as "Non-Exempt" from the FLSA and the MWHL.

3

9. During the relevant period and pursuant to JOHNS HOPKINS' own written policies, it paid Plaintiff on an hourly basis at the regular rates of $18.52 and $18.65 per hour. JOHNS HOPKINS' own policies on overtime (which were in effect during the entire relevant period) confirm that her overtime pay should be calculated as if she were paid by the hour. For example, the policy provides that "[o]vertime pay for non-exempt employees will be determined on the basis of all hours worked." And, under the policy, the employee's regular rate is not determined on a salary basis, but on an hourly basis. The policy states that a non-exempt employee "must be compensated at their standard rate for all hours worked up to 40 hours per week." And they must receive one-and-one-half times that rate for each hour worked over 40 in a single week: "Non-exempt staff must be compensated at the rate of one-and-one-half times their regular rate, the amount used to calculate overtime compensation, for each hour worked in excess of 40 hours." Finally, "[w]hen a non-exempt employee works in excess of the scheduled work day, additional time worked is rounded to the nearest quarter hour (15 minute interval)" and "[i]t must be added to the non-exempt employee's work hours for the day and recorded in the university time entry system in increments of .25, .50, or .75 of an hour as appropriate."

10. JOHNS HOPKINS also requires non-exempt employees like Plaintiff who work on holidays to receive, in addition to being paid for the holiday itself, (a) "[p]remium pay of at least time-and-a half for work performed during a university designated holiday[s] (e.g., Commencement Day, New Year's, Martin Luther King's Birthday, Memorial Day, Christmas Day)" and (b) a substitute holiday. When Plaintiff worked on designated holidays, she never received a substitute holiday nor did she receive premium pay.

11. The policy also requires "[m]anagers and supervisors" to "review the time entries of their non-exempt employees on a weekly basis for accuracy and completeness and for overtime

4

hours that might have been worked." And "the university is required to pay for hours worked when there is no prior authorization [to work overtime hours] from the supervisor."

12.     During her employment with JOHNS HOPKINS, Plaintiff worked the following number of overtime hours and is entitled to the following damages as a result:

| Week Start | Week End | Hours Worked Per Week | Overtime Hours Worked | Hourly Rate | Overtime Pay Owed |
|---|---|---|---|---|---|
| 3/18/2024 | 3/24/2024 | 53.88 | 13.88 | $ 18.52 | $ 385.68 |
| 3/25/2024 | 3/31/2024 | 49.62 | 9.62 | $ 18.52 | $ 267.15 |
| 4/1/2024 | 4/7/2024 | 53.12 | 13.12 | $ 18.52 | $ 364.38 |
| 4/8/2024 | 4/14/2024 | 57.55 | 17.55 | $ 18.52 | $ 487.54 |
| 4/15/2024 | 4/21/2024 | 55.98 | 15.98 | $ 18.52 | $ 444.02 |
| 4/22/2024 | 4/28/2024 | 50.80 | 10.80 | $ 18.52 | $ 300.02 |
| 4/29/2024 | 5/5/2024 | 42.63 | 2.63 | $ 18.52 | $ 73.15 |
| 5/6/2024 | 5/12/2024 | 24.52 | 0.00 | $ 18.52 | $ - |
| 5/13/2024 | 5/19/2024 | 53.53 | 13.53 | $ 18.52 | $ 375.96 |
| 5/20/2024 | 5/26/2024 | 56.53 | 16.53 | $ 18.52 | $ 459.30 |
| 5/27/2024 | 6/2/2024 | 65.87 | 25.87 | $ 18.52 | $ 718.58 |
| 6/3/2024 | 6/9/2024 | 58.18 | 18.18 | $ 18.52 | $ 505.13 |
| 6/10/2024 | 6/16/2024 | 52.73 | 12.73 | $ 18.52 | $ 353.73 |
| 6/17/2024 | 6/23/2024 | 50.03 | 10.03 | $ 18.52 | $ 278.73 |
| 6/24/2024 | 6/30/2024 | 72.43 | 32.43 | $ 18.52 | $ 901.00 |
| 7/1/2024 | 7/7/2024 | 42.08 | 2.08 | $ 18.52 | $ 57.88 |
| 7/8/2024 | 7/14/2024 | 63.65 | 23.65 | $ 18.52 | $ 657.00 |
| 7/15/2024 | 7/21/2024 | 59.8 | 19.8 | $ 18.65 | $ 553.91 |
| 7/22/2024 | 7/28/2024 | 54.48 | 14.48 | $ 18.65 | $ 405.17 |
| 7/29/2024 | 8/4/2024 | 50.17 | 10.17 | $ 18.65 | $ 284.41 |
| 8/5/2024 | 8/11/2024 | 59.85 | 19.85 | $ 18.65 | $ 555.30 |
| 8/12/2024 | 8/18/2024 | 55.57 | 15.57 | $ 18.65 | $ 435.48 |
| 8/19/2024 | 8/25/2024 | 40.12 | 0.12 | $ 18.65 | $ 3.26 |
| 8/26/2024 | 9/1/2024 | 37.93 | 0.00 | $ 18.65 | $ - |
|  |  |  |  |  | $8,866.77 |

13.     Yet, JOHNS HOPKINS only paid Plaintiff for 40 hours per week, no matter how many hours she actually worked. It not only failed to pay Plaintiff an overtime premium for her overtime hours, but it did not pay her anything at all for any additional hours over 40 which she

5

worked in a single work week. Therefore, Defendants violated the FLSA, the MWHL and the MWPCL.

14. JOHNS HOPKINS also had a policy regarding compensation when an employee performed work on a holiday recognized by JOHNS HOPKINS. The policy provided that "[f]ull and part-time staff members required to work during a designated holiday receive either normal pay plus one and one-half times their regular hourly rate for each holiday hour worked or normal pay plus time off at the rate of one and one-half hours for each holiday hour worked." Plaintiff worked several holidays but never received either one-and-one-half times her regular hourly rate for each designated holiday worked nor did she receive the equivalent amount of time off.

15. Plaintiff worked the following holidays on the following dates and is owed the following damages for her unpaid holiday premiums:

| Holiday | Hours Worked | Holiday Premium Rate Owed | Amount Owed |
|---|---|---|---|
| 5/27/2024 | 5.57 | $ 27.78 | $154.73 |
| 6/19/2024 | 3.22 | $ 27.78 | $ 89.45 |
| 7/4/2024 | 4.00 | $ 27.78 | $111.12 |
|  | Total |  | $355.31 |

16. JOHNS HOPKINS also had a policy on vacation leave which permitted Plaintiff to earn vacation or paid time off. It also required JOHNS HOPKINS to pay her for any accrued but unused leave at the time her employment ended. JOHNS HOPKINS violated the policy by debiting vacation leave on days when Plaintiff actually performed work in violation of the MWPCL and when Plaintiff's employment with JOHNS HOPKINS ended, she did not receive an accurate payout for the vacation leave, since she was not paid for improperly debited leave.

6

17.     Plaintiff is owed the following damages for her accrued but unused leave at the time her employment ended:

| Vacation | April | May | June | July | August | September | October |
|---|---|---|---|---|---|---|---|
| Days Earned During Month | 1.25 | 1.25 | 1.25 | 1.25 | 1.25 | 1.25 | 1.25 |
| Balance of Days from Prior Month | 6.42 | 7.67 | 6.56 | 7.81 | 8.06 | 9.31 | 4.56 |
| Sub Total | 7.67 | 8.92 | 7.81 | 9.06 | 9.31 | 10.56 | 5.81 |
| Days Used During Month | 0 | 2.36 | 0 | 1 | 0 | 6 | 0 |
| Balance of Days at End of Month | 7.67 | 6.56 | 7.81 | 8.06 | 9.31 | 4.56 | 5.81 |
|  |  |  |  |  |  |  |  |
|  |  |  | PTO Balance at End of Employment (Hours) |  |  |  | 46.48 |
|  |  |  | Hourly Rate |  |  |  | $ 18.65 |
|  |  |  | **Amount Owed** |  |  |  | **$ 866.85** |

18.     Plaintiff had two supervisors in her position; Akira Sawa was her second line supervisor and Atsushi Saito was her first line supervisor. Throughout the relevant period, Mr. Atsushi was aware that Plaintiff was working overtime hours. In fact, both of them encouraged Plaintiff to work overtime hours. And Mr. Atsushi and Mr. Akira communicated with Plaintiff about work after regular work hours, in the evening and on weekends, and the written communication plainly indicated that Plaintiff was working overtime hours and that Mr. Akira was aware of it.

## COUNT I
## VIOLATIONS OF THE FLSA
## 29 U.S.C. §§ 201 – 216 (b)

19. Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

20. At all times relevant to this Complaint JOHNS HOPKINS was Plaintiff's "employer" within the meaning of the FLSA.

21. At all times relevant to this Complaint, Plaintiff was an "employee" of JOHNS HOPKINS within the meaning of the FLSA.

22. At all times relevant to the Complaint, JOHNS HOPKINS was an enterprise engaged in commerce within the meaning of the FLSA.

23. JOHNS HOPKINS did not act in good faith or with a reasonable belief that its actions were lawful, entitling Plaintiff to liquidated damages.

24. JOHNS HOPKINS violated the FLSA by failing to pay Plaintiff one and one-half times her regular hourly rate for each hour over 40 that she worked in a work week and in fact failed to pay her anything at all for her overtime hours.

25. JOHNS HOPKINS is liable to Plaintiff under 29 U.S.C. § 216 (b), for her unpaid and illegally withheld wages in the amount of $8,866.77, an additional equal amount as liquidated damages ($8,866.77), a total of $17,733.54, and litigation costs and reasonable attorneys' fees.

## COUNT II
## VIOLATIONS OF THE MWHL
### Md. Code Ann., Lab. & Empl. §§ 3-413, 3-420

26. Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

27. At all times relevant to this Complaint, JOHNS HOPKINS was an "employer" of the Plaintiff within the meaning of the MWHL.

28. At all times relevant to this Complaint, Plaintiff was an "employee" of the JOHNS HOPKINS within the meaning of the MWHL.

29. JOHNS HOPKINS violated the MWHL by failing to pay Plaintiff one and one-half times her regular hourly rate for each hour over 40 that she worked in a single work week. In fact, JOHNS HOPKINS paid Plaintiff nothing at all for any hours over 40 that she worked in a particular work week.

30. JOHNS HOPKINS did not act in good faith or with a reasonable belief that its actions were lawful, entitling Plaintiff to liquidated damages.

31. As a result, JOHNS HOPKINS is liable to Plaintiff pursuant to the MWHL for her unpaid and illegally withheld wages in the amount of $8,866.77, an additional equal amount as liquidated damages ($8,866.77), a total of $17,733.54, and litigation costs and reasonable attorneys' fees.

## COUNT III
## VIOLATIONS OF THE MWPCL
### Md. Code Ann., Lab. & Empl. §§ 3-501 – 3-507.2

32. Plaintiff repeats and incorporates by reference all allegations set forth above.

33. At all times relevant to this Complaint, JOHNS HOPKINS was an "employer" of the Plaintiff within the meaning of the MWPCL.

34. At all times relevant to this Complaint, Plaintiff was an "employee" of the JOHNS HOPKINS within the meaning of the MWPCL.

35. JOHNS HOPKINS knowingly, willfully and intentionally violated Plaintiff's rights under the MWPCL by failing to pay Plaintiff her overtime wages and by failing to pay her anything at all for her work hours above 40 in a single work week. The liability stems from both a promise to pay the overtime based on JOHNS HOPKINS' own policies and/or based on its obligations under the MWHL. Plaintiff is owed $8,866.77 for her unpaid overtime wages.

36. JOHNS HOPKINS also violated the MWPCL by failing to pay Plaintiff – in addition to the amount of pay she received for the holiday itself even if she did not perform work – one-and-one-half-times her regular hourly rate for work she performed on holidays. Plaintiff is owed $355.31 in unpaid holiday premiums.

37. JOHNS HOPKINS also violated that MWPCL by debiting Plaintiff's vacation leave on days when Plaintiff actually performed work and failed to pay out the proper leave balance when Plaintiff's employment ended. Plaintiff is owed $866.85 for unpaid vacation leave.

38. JOHNS HOPKINS's unlawful failure or refusal to pay the required wages was not the result of a *bona fide* dispute within the meaning of the MWPCL.

39. JOHNS HOPKINS is liable to Plaintiff pursuant to the MWPCL for the aforementioned wages, in the amount of $10,088.93, an additional amount equal to double the

10

unpaid wages ($20,177.86), a total of $30,266.78, as liquidated damages and litigation costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief:

    a)     enter a judgment against JOHNS HOPKINS and in favor of the Plaintiff in the amount of Plaintiff's unpaid and illegally withheld wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

    b)     enter a judgment against JOHNS HOPKINS and in favor of Plaintiff, based on JOHNS HOPKINS's violations of the MWHL in the amount of Plaintiff's unpaid and illegally withheld wages along with a sum equal to the amount of the unpaid wages as liquidated damages;

    c)     enter a judgment against JOHNS HOPKINS and in favor of Plaintiff, based on JOHNS HOPKINS's violations of the MWPCL in the amount of Plaintiff's unpaid wages along with an amount equal to twice the unpaid wages as liquidated damages; and

    d)     award Plaintiff her litigation costs and reasonable attorneys' fees incurred in this action as provided in 29 U.S.C. § 216 (b) and Md. Code Ann., Labor & Empl. §§ 3-427 (a) and 3-507.2.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy
MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Email: ovmelehy@melehylaw.com
*Attorneys for Plaintiff*